1
2
3
4
5

UNITED STATES DISTRICT COURT

6

EASTERN DISTRICT OF WASHINGTON

7  CHARLES G. WRIGHT,

8                          Plaintiff,

   v.

9

10 JOHN MERK and JANE DOE MERK,
   husband and wife and their marital
11 community, if any, and
   INTERNATIONAL ASSOCIATION
12 OF SHEET METAL, AIR, RAIL,
   AND TRANSPORTATION
   WORKERS, LOCAL 55 (SMART),

13
                          Defendants.
14

NO:  4:14-CV-5090-RMP

ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT AND DENYING
PLAINTIFF'S MOTION TO AMEND
COMPLAINT

15      BEFORE THE COURT is Defendants' Motion for Summary Judgment,

16 **ECF No. 15**, and Plaintiff's Motion to Amend Complaint, **ECF No. 23**.  The Court

17 heard oral argument on the motions on July 23, 2015, in Richland, WA.  Attorney

18 Scott M. Kinshella appeared on behalf of Plaintiff Charles G. Wright, and attorney

19 Jacob H. Black appeared on behalf of Defendants John and Jane Doe Merk, and

20 International Association of Sheet Metal, Air, Rail, and Transportation Works,

GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT ~ 1

Local 55.  The Court has reviewed the motions, considered the parties' arguments, and is fully informed.

## BACKGROUND

Plaintiff Charles Wright[1] was and is a member of International Association of Sheet Metal, Air, Rail, and Transportation Workers Local #55 ("SMART Local #55"), a labor union operating in Washington and Idaho.  ECF No. 19 at 1. Beginning in March 2010, through July 3, 2014, Mr. Wright served as a Union Organizer for SMART Local #55.  Wright Dep., ECF No. 17-1 at 21-22.  Mr. Wright's position as a Union Organizer was subsidized by the International Association of Sheet Metal, Air, Rail, and Transportation Workers ("International"):  SMART Local #55 paid half of his salary, and International paid the other half.  Wright Dep., ECF No. 31-1 at 13; ECF No. 17-1 at 14; Merk. Decl., ECF No. 18 at 3-4.

Mr. Wright was an at-will employee who served a one-year, renewable term of employment.  Wright Decl., ECF No. 19 at 2; Merk Dep., ECF No. 21-1 at 60. International's constitution states that a local organizer "serve[s] at the discretion of the business manager."  ECF No. 18-1, Ex. A at 71.  Mr. Wright's term was

---

[1] Co-Plaintiff Tracey Henderson was dismissed upon the parties' stipulation on January 29, 2015.  ECF No. 14.

renewed five successive years.  Wright Decl., ECF No. 19 at 2.  Mr. Wright states that, when he was hired, the applicable pay structure was explained to him "in a way that made it clear that [he] was under a one year contract which could be renewed for other one year terms with an increase in pay."  Wright Decl., ECF No. 19 at 2.  He understood this term structure to mean "that each March [his] employment would be renewed for another year term assuming [he] was doing [his] job."  Wright Decl., ECF No. 19 at 2.

Mr. Wright alleges that when he was appointed one of the International Organizers, Sean Mahoney, gave him a copy of the 2009 Policy for the Local Union Subsidized Organizers Program and "pointed out the application of its provisions to local organizers and to Local 55."  Wright Decl., ECF No. 19 at 3-4; EC  However, Defendant John Merk contends that "Local 55 did not create the policy, did not distribute the policy to its employees, and did not inform its employees that the policy applied to them."  Merk. Decl., ECF No. 18 at 6-7.  The policy states:

> The Local Union and the International Association, over time, will **invest large sums** of money training, educating, and outfitting the subsidized local union organizer.  The knowledge and skills gained by the organizer over a period of years is invaluable to our organization.  This is not an investment to be taken lightly.  Obviously, when a local union Subsidized Organizer is not doing the assigned duties, the Business Manager may take disciplinary action, up to and including termination.

GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT ~ 3

ECF No. 18-1, Ex. D at 13 (emphasis in original).  Additionally, the policy states

that "[t]he selection of the organizer by the local union is a critical step in the

success of an organizing program and should be undertaken without personal or

political motivation."  ECF No. 18-1, Ex. D at 9.

As a Union Organizer, Mr. Wright engaged in picketing and handbilling,

promoting SMART Local #55.  Wright Dep., ECF No. 17-1 at 54-64.  He worked

to incorporate new targets, or labor forces, into the Union, sometimes engaging

directly with nonorganized employees, and sometimes engaging upper

management regarding recognizing the Union.  Wright Dep., ECF No. 17-1 at 54-

64.  He states that all of his decisions regarding who to target, where to picket or

handbill, and the content of the handbills, had to be approved by either the

International Organizer Sean Mahoney or SMART Local #55's Business Manager

/ Financial Secretary, John Merk.  Wright Decl., ECF No. 19 at 7 ("I had no

control over the decision-making process."); Wright Dep., ECF No. 17-1 at 54-64.[2]

Mr. Merk states that Mr. Wright "played a significant role in developing and

implementing Local 55's organizing strategy. . . .  In accomplishing these tasks,

Wright often consulted with both [Merk] and the International's organizer for our

---

[2] The Business Manager / Financial Secretary is the "top executive position" in

SMART Local #55.  Merk Decl., ECF No. 18 at 2.

GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT ~ 4

region, Sean Mahoney." Merk Decl., ECF No. 18 at 4. However, Mr. Merk

described Mr. Wright's position as a Union Organizer as being "in a policy-

implementing level," as opposed to a "policy-making" position. Merk Dep., ECF

No. 21-1 at 75.

In May 2014, Mr. Wright decided to run for the position of Business

Manager / Financial Secretary. Wright Decl., ECF No. 19 at 6. Mr. Wright ran

against the incumbent, John Merk. Wright Decl., ECF No. 19 at 5-6; Merk Decl.,

ECF No. 18 at 4. In so doing, Mr. Wright campaigned under the slogan "New

People with New Ideas," on a slate with two other candidates: Mark Born, who

successfully ran for Tri-Cities Business Agent, and Tracey Henderson, who

unsuccessfully ran for Boise Business Agent. ECF 17, Ex. D.

While campaigning, Mr. Wright was openly critical of Mr. Merk's

performance as the incumbent Business Manager. Wright Dep., ECF No. 17, Ex.

A at 84, 91-92. He stated that Mr. Merk didn't "have a future in this union," that

he "talks down" about the members, and that he was "weakening [the] organizing

program." Wright Dep., ECF No. 17, Ex. A at 84. He spoke critically of Mr.

Merk's budget decisions, his decision to reduce organizing costs, and the fact that

the telephones at the union hall often went unanswered. Wright Dep., ECF No. 17,

Ex. A at 91-92. He promised, if he was elected, to hire more Union Organizers, to

require the Business Representatives to spend more time in the field, to hire a

secretary to answer the phones, to have quarterly staff meetings, and to hire two additional employees.  Wright Dep., ECF No. 17, Ex. A at 91-92.

Mr. Merk narrowly defeated Mr. Wright in the election on June 24, 2014. Wright Decl., ECF No. 19 at 6.  On July 3, 2014, Mr. Merk terminated Mr. Wright's employment as a Union Organizer.  Wright Decl., ECF No. 19 at 7; Merk Decl., ECF No. 18 at 5.  According to Mr. Wright, Mr. Merk told him that he was terminating Mr. Wright because he ran against him in the election.  Wright Decl., ECF No. 19 at 7.  Defendants do not contend that Mr. Wright was performing his duties unsatisfactorily.  Instead, Mr. Merk admits:

> In my opinion, to lead Local 55 effectively, I need a professional staff that supports my policies.  I felt that by running against me that Wright had exhibited that he was disloyal to me and to my leadership. The members voted for me rather than Wright.  I took this as a mandate to implement my policies and plans for Local 55.  Since Wright had campaigned against me and my policies, I did not have confidence that he could work cooperatively with me to achieve my goals for Local 55.  In light of Wright's statements during the election, I no longer believed that Wright was capable of working with me in my administration and carrying out the membership's mandate.

Merk Decl., ECF No. 18 at 5-6.

Mr. Wright contends that he was never informed by anyone at SMART Local #55 or International that his employment might be terminated if he ran against Mr. Merk and lost.  Wright Decl., ECF No. 19 at 5-6.  Mr. Merk admits

1   that he never told Mr. Wright that if his campaign was unsuccessful, he would be

2   terminated.  Merk Dep., ECF No. 21-1 at 48.

3        Mr. Wright filed a complaint in Franklin County Superior Court on August

4   21, 2014.  ECF No. 2-1.[3]  The complaint alleges three causes of action based on

5   Mr. Wright's termination:  (1) wrongful termination / retaliatory discharge in

6   violation of public policy; (2) breach of implied contract; and (3) discriminatory

7   discharge in violation of RCW 42.17A.495.  ECF No. 2-1.  All three causes of

8   action are based on Washington state law.  ECF No. 2-1.

9        Defendants move for summary judgment on all three causes of action as

10  preempted by federal labor law.  ECF No. 15.  Mr. Wright concedes that his first

11  and third causes of action are preempted and withdraws them.  ECF No. 20 at 3.

12  Mr. Wright contends that his second cause of action claiming a breach of implied

13  contract is not preempted.  ECF No. 20 at 4.  He moves to amend his complaint to

14  include two additional federal causes of action based on §§ 101-102 of the Labor-

15  Management Reporting and Disclosure Act ("LMRDA") and § 301 of the Labor

16  Management Relations Act ("LMRA").  ECF No. 23.

17  / / /

18  / / /

19  [3] Mr. Wright chose not to file a charge with the National Labor Relations Board,

20  but his former co-plaintiff did.  Wright Dep., ECF No. 17, Ex. A at 43; Ex. E.

GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT ~ 7

# DISCUSSION

## A.    Motion for Summary Judgment

Summary judgment is appropriate when the moving party establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  If the moving party demonstrates the absence of a genuine issue of material fact, the burden then shifts to the non-moving party to set out specific facts showing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).  A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The evidence presented by both the moving and non-moving parties must be admissible.  Fed. R. Civ. P. 56(e).  Evidence that may be relied upon at the summary judgment stage includes "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, [and] interrogatory answers . . . ."  Fed. R. Civ. P. 56(c)(1)(A).  The court will not presume missing facts, and non-specific facts in affidavits are not sufficient to support or undermine a claim.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT ~ 8

In evaluating a motion for summary judgment, the Court must draw all reasonable inferences in favor of the nonmoving party. *Dzung Chu v. Oracle Corp. (In re Oracle Corp. Secs. Litig.)*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). However, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of that facts . . . ." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

       i.     *First and Third Causes of Action*

In his first cause of action, Mr. Wright claimed that his termination violated two Washington statutes:  the Little Norris-LaGuardia Act, codified at RCW 49.32.020, which protects workers' freedom to associate and organize; and RCW 42.17A.495(2), which prohibits an employer from discriminating against an employee "in the terms or conditions of employment" for political activism.  ECF No. 2-1 at 7-8.  In his third cause of action, Mr. Wright claimed that his termination constituted a discriminatory discharge in violation of RCW 42.17A.495.

Defendants argued that all of Mr. Wright's claims, including the second cause of action, are preempted by federal labor law.  ECF No. 15.  Specifically, Defendants contend that any claims that Mr. Wright was terminated for engaging in union activity are preempted by the NLRA under *San Diego Bldg. Trades*

GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT ~ 9

*Council v. Garmon*, 359 U.S. 236 (1963).  Defendants also argue that Mr. Wright's claims fall within an area of the law that Congress intended to be left unregulated, and thus are preempted under *Machinists Lodge 76 v. Wis. Emp't Relations Comm'n*, 427 U.S. 132, 149-51 (1976) and *Finnegan v. Leu*, 456 U.S. 431, 435-36 (1982).

Mr. Wright acknowledges that his first and third causes of action are preempted under federal labor law.  ECF No. 20 at 3.  Therefore, Mr. Wright withdraws those claims.  ECF No. 20 at 3.

    *ii.*    *Second Cause of Action*

In his second cause of action, Mr. Wright claims that his termination breached an implied contract of continued employment created between him and SMART Local #55 by the organization's adoption of International's Constitution and Policy for the Local Union Subsidized Organizers Program.  ECF No. 2-1 at 9. Mr. Wright argues that the constitution and Subsidized Organizers Policy gave him the expectation that his employment term would be renewed each year if he performed the job satisfactorily and that he could not be terminated without good cause or based on political motivations.  He argues that SMART Local #55 adopted those policies by communicating their contents to Mr. Wright, thereby creating an implied contract of continued employment.  Mr. Wright also argues that he was never informed that he would be terminated if he ran against Mr. Merk

in the election, and that he detrimentally relied on this implied contract and lack of information regarding the likelihood of his termination when he chose to accept the nomination for Business Manager.  Mr. Wright's claim is based on Washington state common law.

Defendants argue that Mr. Wright's second cause of action is preempted by § 301 of the LMRA because it requires interpretation of two labor contracts:  the constitution and the Subsidized Organizers Policy.  ECF No. 15 at 10.  Mr. Wright disagrees, arguing that his breach of contract claim does not seek to enforce the constitution or the Subsidized Organizers Policy as a contract, but rather, alleges that an implied contract existed between SMART Local #55 and him which "incorporated some of the language present in the contract between Local 55 and the international."  ECF No. 20 at 5.  According to Mr. Wright, "[a]ny language from [the constitution and policy] need only be interpreted indirectly, to the extent that it has been incorporated into the implied contract between Wright and Local 55."  ECF No. 20 at 5.

Section 301 establishes the proper venue for suits by and against labor organizations, permitting those suits to be brought "in any district court of the United States having jurisdiction of the parties . . . ."  29 U.S.C. § 185(a).  The Supreme Court has held that courts must apply federal law to suits brought under § 301.  *Textile Workers Union of America v. Lincoln Mills of Ala.*, 353 U.S. 448, 456

(1957).  Additionally, § 301 has a preemptive effect, prohibiting courts from applying state law to claims regarding collective bargaining agreements.  *Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Co.*, 369 U.S. 95, 103-04 (1962) ("[W]e cannot but conclude that in enacting § 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules.").

Later, the Supreme Court summarized the holding in *Lucas Flour Co.*, stating that "a suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 and be resolved by reference to federal law. A state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-empted by federal labor law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985).  More so, "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law . . . ." *Id.* at 211.  "Therefore, state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties, are pre-empted by those agreements." *Id.* at 213. However, "as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 410 (1988).

International union constitutions are "contracts" under § 301. *Wooddell v. Int'l Broth. Of Elec. Workers, Local 71*, 502 U.S. 93, 99-100 (1991) ("Since union constitutions were at the time of enactment of Taft-Hartley (and remain) probably the most commonplace form of contract between labor organizations, we concluded that Congress would not likely have used the unqualified term 'contract' without intending to encompass union constitutions."). Similarly, a union's bylaws constitute a contract under § 301. *Wooddell*, 502 U.S. at 100. The parties have not presented any case law finding that an international labor union's policy, such as the Subsidized Organizer Policy, constitutes a contract under § 301. However, for purposes of this analysis, the Court will presume that a labor union policy is analogous to a union's bylaws and therefore constitutes a contract under § 301.

Mr. Wright cites *Derrico v. Sheehan Emergency Hosp.*, 844 F.2d 22 (2d Cir. 1988), to show that a state law implied contract claim is not preempted by § 301. *Derrico* is inapposite. In *Derrico*, a plaintiff sought to enforce the terms of an expired collective bargaining agreement. *Derrico*, 844 F.2d at 23. The Second Circuit found that § 301 did not apply to the plaintiff's claim because the collective bargaining agreement was expired. *Id.* at 25. The court stated that "the district court correctly held that section 301 has no application in the absence of a currently effective CBA. Section 301 would of course preempt any attempt to enforce the CBA itself by resort to state law." *Id.* at 25. Only after forming this

conclusion did the court state that its holding was "bolstered" by the fact that the plaintiff's claim alleged an implied contract.  *Id.* at 25.  The Circuit stated that it knew of "no case holding that a contract between an employer and an individual employee falls under section 301."  *Id.* at 26.

Mr. Wright's argument that the Court only need analyze the constitution and policy indirectly is unpersuasive.  Mr. Wright alleges that an International employee, Sean Mahoney, showed him the provisions in the constitution and Subsidized Union Organizers' Policy that applied to his position.  He argues that in showing him these provisions, SMART Local #55 adopted the terms of the documents, and that combined with statements made by other employees, an implied contract was formed between Mr. Wright and SMART Local #55.  Mr. Wright contends that the actions and words of union personnel comprise the alleged implied contract because there is no written employment contract between Mr. Wright and SMART Local #55.  Therefore, the act of showing Mr. Wright the constitution and policy itself arguably makes up part of the implied contract.[4]

---

[4] The Court notes that Mr. Mahoney is not an employee of SMART Local #55. Whether he had the authority to bind SMART Local #55 is an issue not briefed by the parties.

GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT ~ 14

1    In this case, Mr. Wright alleges that the constitution and policy are at least

2    part of the alleged implied contract.  Therefore, the Court must read the

3    constitution and policy in order to determine which provisions allegedly make up

4    the implied contract, as well as read the context of those provisions.  Under *Lucas*

5    *Flour Co.* and *Allis-Chalmers Corp.*, the Court is prohibited from analyzing the

6    constitution, and arguably the policy, in order to determine a claim pursuant to

7    state law.

8        Defendants also argue that Mr. Wright's second cause of action is preempted

9    by the NLRA because it is based on Mr. Wright's having engaged in "concerted

10   protected activities" and because the second cause of action is related to his

11   termination.  ECF No. 29.  Therefore, under *Garmon*, Mr. Wright's breach of

12   contract claim is preempted.  ECF No. 15 at 2 – 5.

13       In *Garmon*, the Supreme Court held that "[w]hen an activity is arguably

14   subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must

15   defer to the exclusive competence of the National Labor Relations Board if the

16   danger of state interference with national policy is to be averted."  *Garmon*, 359

17   U.S. at 245.  Section 7 of the NLRA protects workers' rights to "self-organization,

18   to form, join, or assist labor organizations, to bargain collectively through

19   representatives of their own choosing, and to engage in other concerted activities

20   for the purpose of collective bargaining or other mutual aid or protection . . . ."  29

1  U.S.C. § 157.  Under § 8 of the NLRA, it is an "unfair labor practice" for an

2  employer to "interfere with, restrain, or coerce employees in the exercise of the

3  rights guaranteed" by § 7.  29 U.S.C. § 158(a)(1).

4       This Court previously considered whether an employee's claim of wrongful

5  termination, based on the employee's participation in an election, was preempted

6  by § 7 of the NLRA.  *Kirwin v. Teamsters Local Union* No. CV-10-365-RMP,

7  2012 WL 553993, *7 (E.D. Wa. Feb. 21, 2012).  The Court reasoned that because

8  the employees' state law claim "springs from their employment with the Union,

9  not their membership in the union," the state law claim is "included within the

10 protections of § 157, and the NLRA is applicable."  *Kirwin*, 2012 WL 553993, at

11 *8.  The Court concluded that "the adverse employment action resulting from the

12 campaign conduct described in this record is 'arguably' protected under the

13 NLRA.  [ ]  As that is all that is required for state remedial schemes to be

14 preempted," the Court held the employees' wrongful termination claim to be

15 preempted by the NLRA.  *Id.* at *9.

16      Mr. Wright relies on *Belknap, Inc. v. Hale*, 463 U.S. 491 (1983), for the

17 contention that "independent state law contract claims" are not preempted by the

18 NLRA.  ECF No. 20 at 8.  In *Belknap*, the Court considered whether a suit alleging

19 misrepresentation and breach of contract with replacement workers was preempted

20

GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT ~ 16

by the NLRA. *Belknap*, 463 U.S. at 496. The Court held that the contract claims were not preempted by the NLRA. *Id.* at 510.

The Court relied on the rule that "[u]nder *Garmon*, a state may regulate conduct that is of only peripheral concern to the Act or which is so deeply rooted in local law that the courts should not assume that Congress intended to preempt the application of state law." *Id.* at 509. The Court cited three previous cases in support of the rule: *Linn v. Plant Guard Workers*, 383 U.S. 53 (1966), holding that the NLRA did not preempt an action based on false and malicious statements in the course of a labor dispute; *Farmer v. Carpenters*, 430 U.S. 290 (1977), holding that the NLRA did not preempt a state action for intentional infliction of emotional distress; and *Sears, Roebuck & Co. v. Carpenters*, 436 U.S. 180 (1978), holding that the NLRA did not preempt a trespass action. *Id.* The Court stated that the "critical inquiry in applying the *Garmon* rules, where the conduct at issue . . . is said to be arguably prohibited by the Act and hence within the exclusive jurisdiction of the NLRB, is whether the controversy presented . . . is identical with that which could be presented to the Board." *Id.* at 510.

The analysis applied by this Court in the *Kirwin* case applies here. "[T]he adverse employment action resulting from the campaign conduct described in this record is 'arguably' protected under the NLRA." *Kirwin*, 2012 WL 553993, at *9. Conduct only need be "arguably subject to § 7 or § 8 of the [NLRA]" to be

GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT ~ 17

preempted under *Garmon*.  *Garmon*, 359 U.S. at 245.  Accordingly, Mr. Wright's implied contract claim is preempted under *Garmon*.

*Belknap* provides a poor basis for finding an exception in this case, since the three cases it cites in support of an exception are all distinguishable from the instant case.  A claim for breach of an implied employment contract is not "peripheral" to the NLRA in the same way that a claim for false and malicious statements, intentional infliction of emotional distress, or trespass, may be peripheral.  Additionally, the claim alleged in this case by Mr. Wright is identical to a claim Mr. Wright could have brought before the NLRB, but chose not to pursue.  Indeed, Mr. Wright's former co-plaintiff did file a claim with the NLRB on the same basis.  Wright Dep., ECF No. 17, Ex. E.

Defendants also argue that, if the Court were to reach the merits of Mr. Wright's breach of implied contract claim, the claim fails on the merits because Mr. Wright cannot show that the implied contract contained a "promise of specific treatment in specific situations," as required under Washington law.  ECF No. 15 at 12 (citing *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 222 (1984) (en banc)).  Because the Court finds that Mr. Wright's second cause of action is preempted by federal labor law, the Court need not reach the issue of whether Mr. Wright's claim fails on the merits.

1    Therefore, the Court grants Defendant's motion for summary judgment on

2    Mr. Wright's second cause of action alleging a breach of an implied contract of

3    continued employment because that claim is preempted under § 301 of the LMRA

4    and under the NLRA and *Garmon*.

5    **B.    Motion to Amend Complaint**

6        Mr. Wright moves to amend his complaint to include two additional causes

7    of action based on federal labor law:  a claim for violation of rights secured under

8    §§101-102 of the LMRDA, and a claim to enforce the provisions of the Subsidized

9    Organizer Policy under § 301 of the LMRA.  ECF No. 23.  Mr. Wright argues that

10   he should be permitted to amend his complaint under Federal Rule of Civil

11   Procedure 15(a)(2), which permits a party to amend a pleading with leave of the

12   court.  ECF No. 23 at 3.  The rule states that "[t]he court should freely give leave

13   when justice so requires."  Fed. R. Civ. P. 15(a)(2).

14       Defendants contend that Mr. Wright must be required to meet the higher

15   burden of good cause, because Mr. Wright seeks to amend the complaint after the

16   deadline set by the Court in the Court's scheduling Order, ECF No. 23.  The Order

17   required that any motion to amend pleadings be filed no later than November 20,

18   2014, and states that the "schedule shall not be modified unless the Court finds

19   good cause to grant leave for modifications" pursuant to Rule 16.  The Court

20

GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT ~ 19

1  agrees with Defendants that Mr. Wright must show good cause to amend the

2  Complaint because he failed to meet the deadline established in the Court's Order.

3      Pursuant to Rule 16(b), a party must establish "good cause" to justify

4  modification of a scheduling order.  *See* Fed. R. Civ. P. 16(b)(4).  "Unlike Rule

5  15(a)'s liberal amendment policy which focuses on the bad faith of the party

6  seeking to interpose an amendment and the prejudice to the opposing party, Rule

7  16(b)'s 'good cause' standard primarily considers the diligence of the party

8  seeking the amendment."  *Johnson*, 975 F.2d at 609.  "If that party was not

9  diligent, the inquiry should end."  *Id.*

10      i.    *Diligence*

11      Defendants contend that Mr. Wright was not diligent in amending the

12  complaint.  ECF No. 27 at 2.  First, Defendants note that Mr. Wright "knew all the

13  facts necessary to plead an LMRDA violation at the time he filed the Complaint,"

14  as evidenced by the fact that he states that his complaint "provide[s] a sufficiently

15  plausible factual basis" for the claim.  ECF No. 27 at 2.  Second, Defendants state

16  that, prior to filing the complaint, Mr. Wright's attorney sent Defendants' attorney

17  a letter explaining his LMRDA theory, which he now seeks to add to the

18  complaint.  ECF No. 27 at 2; ECF No. 28-1.  Third, Defendants note that Mr.

19  Wright's attorney was on notice of the § 301 claim he now seeks to add because

20  Defendants described the Subsidized Organizer Policy as "a contract between two

labor organizations" under § 301 of the LMRA in the Notice of Removal.  ECF No. 27 at 2; ECF No. 1.  Finally, Defendants argue that Mr. Wright's attorney is an experienced lawyer who has been licensed since 1982, and that therefore he is "presumed to know the law."  ECF No. 27 at 2.

Mr. Wright did not reply to Defendants' response memorandum.  During oral argument, Mr. Wright's attorney did not provide any justification for the delay in seeking amendment of the complaint, stating only that he has seen delayed complaint amendments in similar cases before, and asking the Court to forgive the error.

Based on the evidence available to the Court, it does appear that Mr. Wright's attorney was not diligent in seeking amendment of the complaint and that there was no justifiable excuse for the delay.  Typically, the Court is hesitant to fault a plaintiff for his counsel's error.  However, the Court also finds and discusses below that amendment of the complaint to include Mr. Wright's LMRDA claim likely would be futile, and amendment may be futile as to Mr. Wright's LMRA claim.  Additionally, amending the complaint to add the LMRA claim would require additional discovery and a continuance of the trial date which would unfairly prejudice Defendants.

/ / /

/ / /

*ii.    Futility*

Mr. Wright seeks to amend his complaint to add a claim for violation of rights secured under §101of the LMRDA, which "guarantee[s] equal voting rights, and rights of speech and assembly, to every member of a labor organization." *Finnegan v. Leu*, 456 U.S. 431, 436 (1982) (quoting sections 101(a)(1) and (2) of the LMRDA, codified at 29 U.S.C. §§ 411(a)(1)) (internal quotation marks omitted).  Mr. Wright also seeks to amend his complaint to add a claim under § 102 of the LMRDA, which provides a civil right of action for persons whose rights secured in § 101 are violated.  29 U.S.C. § 412.

The Supreme Court in *Finnegan* held that § 101 of the LMRDA did not apply to "union officers or employees."  *Finnegan*, 456 U.S. at 437.  However, the Supreme Court specifically "le[ft] open the question whether a different result might obtain in a case involving nonpolicymaking and nonconfidential employees."  *Id.* at 441, n.11.

Mr. Wright argues that as a union organizer, he was a nonpolicymaking and nonconfidential employee falling outside the scope of *Finnegan*.  Wright Decl., ECF No. 19 at 7-8.  Defendants contend that Mr. Wright was a "policymaking employee" who does not fall under the footnote exception to the *Finnegan* rule.  ECF No. 27 at 6.  Both parties present testimony from Mr. Wright and Mr. Merk in support of their positions, although Mr. Merk admits that Mr. Wright's position

was "in a policy-implementing level."  ECF No. 21-1 at 75; *see supra* Background section.

In support of their position, Defendants cite two cases from other circuit courts, *Witmeyer v. Brotherhood of Ry. Airline & S.S. Clerks*, 779 F.2d 206, 208 (4th Cir. 1985), and *Rutledge v. Aluminum, Brick & Clay Workers, Int'l Union*, 737 F.2d 965 (11th Cir. 1984), as well as two cases from state courts of appeal. ECF No. 27 at 6-7.  None of the cases cited by Defendant is binding precedent in this Court.  The Eleventh Circuit case cited by Defendants, *Rutledge*, held that *Finnegan* applies to union employees who implement policy as well as those that make policy.  *Rutledge*, 737 F.2d at 967.  Given Mr. Merk's admission that Mr. Wright was a policy-implementing employee, Defendants appear to be relying on the *Rutledge* case for their position that *Finnegan* bars claims by employees who implement policy as well as those who make policy.

The Ninth Circuit held that *Finnegan* barred the wrongful discharge claims of a local union business representative brought pursuant to the LMRDA because her membership rights were not affected by her employment termination.  *Childs v. Local 18, Intern. Broth. Of Elec. Workers*, 719 F.2d 1379, 1383-84 (9th Cir. 1983), *abrogation on unrelated grounds recognized by Swift v. Realty Exec. Nev. Choice*, 211 F. App'x 571 (9th Cir. 2006).  The court in *Childs* did not address whether the plaintiff had held a policy-making or policy-implementing role, and that distinction

did not appear relevant to the court's analysis.  *Id.* at 1384; *see Lynn v. Sheet Metal Workers' Int'l Ass'n*, 804 F.2d 1472 (1986) (finding that a discharged business representative whose membership rights were unaffected by his termination could not bring a claim under § 101 of the LMRDA and neglecting to consider whether the employee served in a policy-making or policy-implementing role).  This Court is not aware of a Ninth Circuit case discussing the distinction between a policy-making and a policy-implementing employee under *Finnegan*.  Therefore, the Court declines to find that alleged distinction has any bearing on whether Mr. Wright's proposed LMRDA claim is viable.

In *Lynn v. Sheet Metal Workers' Int'l Ass'n*, the Ninth Circuit expressly considered whether a discharged business representative could bring a claim against a local union under §§ 101 and 102 of the LMRDA after *Finnegan*.  *Lynn*, 804 F.2d at 1478.  The plaintiff in *Lynn* had spoken out against a union policy at a union meeting and subsequently been fired.  *Id.* at 1476.  The court concluded that the plaintiff's union employment did not qualify as a right protected by § 101, but that the plaintiff's free speech rights were protected by § 101.  *Id.* at 1478.

However, the Court noted that the plaintiff's free speech rights were not directly infringed because the plaintiff was not prevented from attending or speaking at the union meeting.  *Id.* at 1479.  The court concluded that under *Finnegan*, the plaintiff could not state a claim for relief under § 101 of the

LMRDA because his membership rights had not been directly infringed as required under *Finnegan*.  *Id.* at 1478-79 ("[A]n individual may state a cause of action under section 101 only for those acts which violate his membership rights, and not for those which infringe upon whatever rights he may have acquired by virtue of his status as an officer or employee.).

The *Lynn* court next considered whether the plaintiff had a cognizable claim under § 102 of the LMRDA.  *Id.*  The court noted that, in *Finnegan*, the Supreme Court "neither defined the scope of a section 102 claim nor held that only a direct infringement of a Title I right was actionable."  *Id.*  However, in *Finnegan*, the Court stressed that the "overriding objective" of the LMRDA was "to ensure that unions would be democratically governed, and responsible to the will of the union membership as expressed in open, periodic elections."  *Id.* (quoting *Finnegan*, 456 U.S. at 441) (internal quotation marks omitted).  Accordingly, the Supreme Court protected the right of an elected president to select her appointed administrators. *Id.* (citing *Finnegan*, 456 U.S. at 441).

However, the *Lynn* court also recognized that "the power to remove an official from office may also be used to suppress dissent, either through retaliation, or through intimidation."  *Id.* (citing *Finnegan*, 456 U.S. at 441).  "The removal of an official under these circumstances can only impede the democratic governance of the union."  *Id.*  Based on the theory that removing an elected official from

GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT ~ 25

union employment can serve to impede the democratic process, the Ninth Circuit

held that the plaintiff had a cognizable claim against the local union under § 102 of

the LMRDA.  *Id.*

The Ninth Circuit has limited *Lynn*'s holding to the removal of elected

officials, as opposed to appointed officials:

> The *Finnegan* Court twice pointed out that the foremost objective of
> the LMRDA "was to ensure that unions would be democratically
> governed, and responsive to the will of the union membership as
> expressed in open, periodic elections." *Finnegan*, 456 U.S. at 441.
> Given this emphasis, it follows that newly elected officers should be
> given a free rein to remove their predecessor's appointees.  The
> mandate of an appointee stems directly from the elected official who
> appointed her, and once the elected official has been removed from
> office by the membership, it would be anti-democratic to forbid the
> removal of that official's functionaries.  This rationale does not
> support the removal of elected union officers.  Their mandate comes
> directly from the membership, and the more democratic result would
> obtain were the membership able to maintain its authority over elected
> positions.

*Brett v. Hotel, Motel, Rest., Const. Camp Emps. and Bartenders Union, Local 879,*

828 F.2d 1409, 1415 (9th Cir. 1987).

Like the plaintiff in *Lynn*, Mr. Wright's free speech rights were not directly

infringed by his termination.  To the contrary, Mr. Wright actively participated in

the election process, campaigning for himself and others while speaking out

against the incumbent, Mr. Merk.  Therefore, like the plaintiff's § 101 claim in

*Lynn*, Mr. Wright's proposed § 101 claim is not cognizable.  Amendment of the

complaint to add a § 101 claim is futile.  Additionally, unlike the plaintiff in *Lynn*,

GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT ~ 26

1    Mr. Wright was an appointed employee. Under *Brett*, the *Lynn* holding permitting

2    an elected employee to bring a claim under § 102 of the LMRDA does not apply to

3    Mr. Wright. Amendment of Mr. Wright's complaint to add a § 102 claim is also

4    futile.

5        Mr. Wright also seeks to amend his complaint to include a claim under § 301

6    of the LMRA. ECF No. 23. Defendants argue that Mr. Wright may not bring a §

7    301 claim under the LMRA because he is suing as an employee of the union rather

8    than as a member. ECF No. 27 at 7-8. In *Wooddell*, the Supreme Court held that a

9    union member could sue a local union under § 301 of the LMRA for violations of

10   the union's constitution. *Wooddell*, 502 U.S. at 101-102. The Court stated:

11       Collective-bargaining agreements are the principal form of contract
         between an employer and a labor organization. Individual union
12       members, who are often the beneficiaries of provisions of collective-
         bargaining agreements, may bring suit on these contracts under § 301.
13       Likewise, union constitutions are an important form of contract
         between labor organizations. Members of a collective-bargaining unit
14       are often the beneficiaries of such inter-union contracts, and when
         they are, they likewise may bring suit on these contracts under § 301.

15   *Id.* at 101.

16       Defendants attempt to distinguish *Wooddell* by arguing that it applies only to

17   "members" of a collective-bargaining unit, instead of union employees. ECF No.

18   27 at 8. Defendants cite to three cases from other circuits, none of which is

19   binding on this Court. ECF No. 27 at 8-9. Additionally, the Seventh Circuit case

20

GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT ~ 27

cited by Defendants, *Korzen v. Local Union 705, Int'l Bhd. Of Teamsters*, supports

the conclusion that Mr. Wright's claim does fall within the ambit of § 301.

In *Korzen*, two employees brought suit against a local union employer after

the union terminated their employment, allegedly in retaliation for their support of

the former Chief.  *Korzen v. Local Union 705, Int'l Bhd. Of Teamsters*, 75 F.3d

285, 287 (7th Cir. 1996).  The union employees claimed a violation of the

international union's constitution under § 301 of the LMRA.  *Id.*  The Seventh

Circuit considered whether the federal court had jurisdiction over the claim and

concluded:  "there is federal jurisdiction over the plaintiffs' claims for breach of

the international's constitution, of which they as members of the union are third-

party beneficiaries . . . ."  *Id.* at 288.  However, after analyzing the terms of the

constitution, the court held that it did not grant the plaintiffs any rights to

employment that had been infringed by their termination, and thus the claim failed

on its merits.  *Id.* at 289.  Therefore, under *Korzen*, it seems that a union employee

may assert a claim as a beneficiary to a § 301 contract depending on the content of

that contract.

Additionally, the Ninth Circuit has permitted a union employee to bring suit

against a local union for violation of the union's constitution under § 301, albeit in

GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT ~ 28

an unpublished decision.  *Canzen v. Laborers' Int'l Union of North America*, 40 F.3d 1246 (9th Cir. 1994).[5]

Under *Wooddell*, *Korzen*, and *Canzen*, Mr. Wright may be able to bring a § 301 claim as a union employee.  Additionally, in this case, both the constitution and the Subsidized Organizer Policy reference Mr. Wright's position as a Union Organizer.  Thus, there may exist a genuine issue of material fact as to whether the relevant provisions created rights to employment that were infringed by Mr. Wright's termination.

However, additional discovery is necessary regarding whether the International Constitution and the Subsidized Organizer Policy gave Mr. Wright

---

[5] The Court notes that the Ninth Circuit in *Canzen* permitted the plaintiff to bring a claim under § 301 based on the local union's constitution, rather than the international constitution.  *Cazen*, at *3.  The Seventh Circuit in *Korzen* held that union employees could not bring a claim in federal court under § 301 for violations of a union's local constitution because the local constitution did not constitute a contract between two labor organizations.  *Korzen*, 75 F.3d at 288.  However, the court noted that, since a claim alleging a violation of a local constitution was a state law claim, a federal court might exercise supplemental jurisdiction over it.  *Id.* at 289.

employment rights.  Defense counsel noted at oral argument that whether or not Mr. Wright, in his position as a Union Organizer, was an individual intended to be protected by the constitution and policy, is a question of fact requiring additional discovery and depositions.  The Court agrees.

The discovery deadline was April 17, 2015, and trial is scheduled to begin on October 5, 2015.  Requiring the parties to reopen discovery and continue the trial date would unfairly prejudice Defendants, especially in light of the lack of diligence by Mr. Wright in amending the complaint.  Therefore, the Court will not permit Mr. Wright to amend the complaint.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Defendants' Motion for Summary Judgment, **ECF No. 15**, is **GRANTED.**

2.  Plaintiff's Motion to Amend Complaint, **ECF No. 23,** is **DENIED**.

The District Court Clerk is directed to enter this Order, enter Judgment accordingly, provide copies to counsel, and **close** this case.

**DATED** this 28th day of July 2015.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
Chief United States District Court Judge

GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT ~ 30